EXHIBIT A

DECLARATION OF MARK A. ROHRS

MARK A. ROHRS, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am employed by the Department of Homeland Security ("DHS"), Citizenship and Immigration Services Division ("USCIS"), as the Assistant Service Center Director of the Nebraska Service Center (NSC) in Lincoln, Nebraska. Due to a temporary absence of our Director, F. Gerard Heinauer, I am the Acting Director of the NSC. It is in that capacity and based upon reasonable inquiry and my knowledge, information and belief that I provide this declaration.

2. The Director of USCIS is a named defendant in the case <u>Nishat Kousar v. Mueller, et al</u>, 07-05221, presently pending in the United States District Court for the Northern District of California. Plaintiff Nishat Kousar seeks to have her pending Form I-485, Application for Adjustment of Status, adjudicated. Her application is currently pending at the NSC in Lincoln, Nebraska.

3. Plaintiff Nishat Kousar is a citizen of India and assigned alien registration number A95 410 680. Plaintiff filed Form I-485, Application for Adjustment of Status, at the Nebraska Service Center on January 5,

2004, and Plaintiff's application was assigned receipt number LIN 04-063-54893. Plaintiff's application to adjust status remains pending.

4. There are five CIS Service/Benefit Centers throughout the United States (California, Texas, Missouri, Nebraska and Vermont), each of which has jurisdiction over certain applications and petitions filed by persons or companies within its respective geographic area, and/or exclusive nationwide jurisdiction over other types of applications. Service Centers adjudicate cases on a mail-in basis only; they do not conduct in-person interviews.

5. NSC is responsible for the receipt, processing and adjudication of family-based or employment-based immigrant and nonimmigrant visa petitions and other applications filed by petitioners and applicants residing in Alaska, Colorado, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, North Dakota, Ohio, Oregon, South Dakota, Utah, Washington, Wisconsin and Wyoming.

6. NSC also has exclusive nationwide jurisdiction over asylee/refugee adjustment of status applications, applications for reentry permits/refugee travel documents, special Haitian and Indochinese adjustment

applications, NAFTA cases, military naturalization, and asylee/refugee relative petitions. NSC processes and schedules all naturalization applications for interviews in the field offices within its geographic jurisdiction. NSC processes all applications for replacement of alien registration cards (green cards) filed by aliens at local district offices within its geographic area.

7. Plaintiff seeks adjudication of her pending asylee-based Form I-485, Application for Adjustment of Status to that of a Lawful Permanent Resident. An alien admitted to the United States as an asylee is eligible to file for adjustment of status after being physically present in the United States for one year. While in asylee status, an alien may be issued a refugee travel document to facilitate overseas travel. Plaintiff's most recent travel document expired on June 11, 2007. However, Plaintiff submitted an application for a new travel document to USCIS on August 29, 2007, and that application remains pending. On October 30, 2007, USCIS received notice from Plaintiff of an address change and USCIS updated its database accordingly. Asylees may also be issued work authorization documents. Although eligible, Plaintiff does not

possess a valid work authorization document, nor does she have an application pending with USCIS to obtain a work authorization document.

8. Once an asylee is granted adjustment of status, the asylee's admission date as a lawful permanent resident ("green card" holder) is backdated to the date of the alien's original arrival and admission to the United States as an asylee. An alien who has resided continuously in the United States for at least five years after being lawfully admitted for permanent residence is eligible to file for naturalization.

9. When an alien applies for adjustment of status, CIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and that he or she is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and

intelligence agencies, such as the Central Intelligence Agency (CIA), FBI, other divisions of the United States Department of Justice, Department of State, DHS/U.S. Customs and Border Protection (CBP), and other DHS agencies; IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity; and (c) and FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.

10. These law enforcement checks have revealed significant derogatory information on various alien applicants for immigration benefits, including applicants seeking permanent residency, which has resulted in the alien being found ineligible for the benefit and CIS's denial of the application. Where applicable, the information has also resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States following a final order of removal. In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.

11. Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and thorough background checks on aliens who are seeking immigration status in the United States has required procedures that sometimes result in individuals not receiving their documents and benefits as quickly as in the past. In order to ensure national security and public safety, as well as to reduce the waiting time for adjudication and documentation of lawful status, CIS is currently working with DOJ, DHS, and ICE to develop and implement improved procedures that will ensure that all of the background checks are completed and the results considered as quickly as possible. However, the public safety requires CIS to make certain that the checks have been done before it adjudicates any application or petition and before it issues any immigration status documents to such persons.

12. The Nebraska Service Center currently has approximately 187,930 employment-based Form I-485 adjustment of status cases pending, about 70,579 of which are still awaiting completion of FBI name checks before they can be adjudicated. Of an additional 85,895 (estimated) pending asylum/refugee-base Form I-485 adjustment of status cases, there are approximately 8,061 awaiting

responses on FBI name checks. Of a total figure of 84,355 naturalization filings being processed at the Nebraska Service Center, there are approximately 21,728 awaiting responses on FBI name checks. Cases in which the pending FBI name check is the only impediment to final adjudication are audited on a weekly basis in order to identify those in which a response from the FBI has been received. Once the security checks are completed, the case can be evaluated for visa number availability.

13. Since 9/11, USCIS has submitted millions of name check requests to the FBI, thus taxing that agency's resources and creating a backlog in FBI's performance of complete security checks. Plaintiff's name check request was electronically submitted to the FBI on January 7, 2004, less than one week after USCIS received Plaintiff's adjustment of status application. The FBI acknowledged receipt of the name check on January 14, 2004. The name check remains pending. A response is required from the FBI before the case can be adjudicated.

14. CIS will continue to perform any outstanding background and security checks as expeditiously as possible to help ensure that no eligible alien must wait longer

than is reasonably necessary to receive a decision on his or her application or petition and to receive evidence of his or her immigration status.

15. The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated. Plaintiff submitted fingerprints on July 9, 2004, February 7, 2006, and May 1, 2007.

16. Plaintiff Nishat Kousar applied for and was granted asylum on August 30, 2002. Plaintiff filed her application for adjustment of status (Form I-485) at the Nebraska Service Center on January 5, 2004. Plaintiff applied approximately 15 months after her asylee status was granted.

17. NSC is actively adjudicating Plaintiff's application in accordance with standard procedures for asylee adjustment of status applications.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed at Lincoln, Nebraska
on this 24th day of January, 2008.

*[signature]* ACTING DIRECTOR
Mark A. Rohrs
Acting Director
Nebraska Service Center

ATTACHMENT

*Press Office*
**U.S. Department of Homeland Security**



**U.S. Citizenship and Immigration Services**

# Fact Sheet

April 25, 2006

## Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

Immigration Security Checks—How and Why the Process Works

---

### How Immigration Security Checks Work

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check**— IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check**—FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks**—FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

---

several years to resolve. Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided. USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.