DECLARATION OF F. GERARD HEINAUER

F. GERARD HEINAUER, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am employed by the Department of Homeland Security ("DHS"), Citizenship and Immigration Services Division ("USCIS"), as the Director of the Nebraska Service Center ("NSC") in Lincoln, Nebraska. It is in that capacity and based upon reasonable inquiry and my knowledge, information and belief that I provide this declaration.

2. The Director of USCIS is a named defendant in the case Nishat Kousar v. Mueller, et al, 07-05221, presently pending in the United States District Court for the Northern District of California. Plaintiff Nishat Kousar seeks to have her pending Form I-485, Application for Adjustment of Status, adjudicated. Her application is currently pending at the NSC in Lincoln, Nebraska.

3. Plaintiff Nishat Kousar is a citizen of India and assigned alien registration number A95 410 680. Plaintiff filed Form I-485, Application for Adjustment of Status, at the Nebraska Service Center on January 5, 2004, and Plaintiff's application was assigned receipt

    number LIN 04-063-54893. Plaintiff's application to adjust status remains pending.

4. There are five CIS Service/Benefit Centers throughout the United States (California, Texas, Missouri, Nebraska and Vermont), each of which has jurisdiction over certain applications and petitions filed by persons or companies within its respective geographic area, and/or exclusive nationwide jurisdiction over other types of applications. Service Centers adjudicate cases on a mail-in basis only; they do not conduct in-person interviews.

5. NSC is responsible for the receipt, processing and adjudication of family-based or employment-based immigrant and nonimmigrant visa petitions and other applications filed by petitioners and applicants residing in Alaska, Colorado, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, North Dakota, Ohio, Oregon, South Dakota, Utah, Washington, Wisconsin and Wyoming.

6. NSC also has exclusive nationwide jurisdiction over asylee/refugee adjustment of status applications, applications for reentry permits/refugee travel documents, special Haitian and Indochinese adjustment applications, NAFTA cases, military naturalization, and

asylee/refugee relative petitions. NSC processes and schedules all naturalization applications for interviews in the field offices within its geographic jurisdiction. NSC processes all applications for replacement of alien registration cards (green cards) filed by aliens at local district offices within its geographic area.

7. Plaintiff seeks adjudication of her pending asylee-based Form I-485, Application for Adjustment of Status to that of a Lawful Permanent Resident. An alien admitted to the United States as an asylee is eligible to file for adjustment of status after being physically present in the United States for one year. While in asylee status, an alien may be issued a refugee travel document to facilitate overseas travel. Plaintiff currently possesses a travel document valid through February 4, 2009. On October 30, 2007, USCIS received notice from Plaintiff of an address change and USCIS updated its database accordingly. Asylees may also be issued work authorization documents. Although eligible, Plaintiff does not possess a valid work authorization document, nor does she have an application pending with USCIS to obtain a work authorization document.

8. Once an asylee is granted adjustment of status, the asylee's admission date as a lawful permanent resident ("green card" holder) is backdated to a date one year prior to the date of the adjustment approval. An alien who has resided continuously in the United States for at least five years after being lawfully admitted for permanent residence is eligible to file for naturalization.

9. When an alien applies for adjustment of status, CIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and that he or she is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, such as the Central Intelligence Agency (CIA), FBI, other divisions of the United States Department of Justice, Department of State, DHS/U.S.

Customs and Border Protection (CBP), and other DHS agencies; IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity; and (c) and FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.

10. These law enforcement checks have revealed significant derogatory information on various alien applicants for immigration benefits, including applicants seeking permanent residency, which has resulted in the alien being found ineligible for the benefit and CIS's denial of the application. Where applicable, the information has also resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States following a final order of removal. In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.

11. Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and thorough background checks on aliens who are seeking immigration status in

the United States has required procedures that sometimes result in individuals not receiving their documents and benefits as quickly as in the past. In order to ensure national security and public safety, as well as to reduce the waiting time for adjudication and documentation of lawful status, CIS is currently working with DOJ, DHS, and ICE to develop and implement improved procedures that will ensure that all of the background checks are completed and the results considered as quickly as possible. However, the public safety requires CIS to make certain that the checks have been done before it adjudicates any application or petition and before it issues any immigration status documents to such persons.

12. The Nebraska Service Center currently has approximately 187,930 employment-based Form I-485 adjustment of status cases pending, about 70,579 of which are still awaiting completion of FBI name checks before they can be adjudicated. Of an additional 85,895 (estimated) pending asylum/refugee-base Form I-485 adjustment of status cases, there are approximately 8,061 awaiting responses on FBI name checks. Of a total figure of 84,355 naturalization filings being processed at the Nebraska Service Center, there are approximately 21,728

awaiting responses on FBI name checks. Once the security checks are completed, the case can be evaluated for visa number availability.

13. Since 9/11, USCIS has submitted millions of name check requests to the FBI, thus taxing that agency's resources and creating a backlog in FBI's performance of complete security checks. Plaintiff's name check request was electronically submitted to the FBI on January 7, 2004, less than one week after USCIS received Plaintiff's adjustment of status application. The FBI acknowledged receipt of the name check on January 14, 2004. The name check was completed on January 24, 2008.

14. On February 4, 2008, USCIS initiated a policy for those applications that are otherwise approvable and the FBI name check request has been pending for more than 180 days. This policy change does not impact Plaintiff's application because the FBI completed Plaintiff's name check on January 24, 2008.

15. However, some cases involve complex information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

16. CIS will continue to perform any outstanding background and security checks as expeditiously as possible to help ensure that no eligible alien must wait longer than is reasonably necessary to receive a decision on his or her application or petition and to receive evidence of his or her immigration status.

17. The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated. Plaintiff submitted fingerprints on July 9, 2004, February 7, 2006, and May 1, 2007.

18. Plaintiff Nishat Kousar applied for and was granted asylum on August 30, 2002. Plaintiff filed her application for adjustment of status (Form I-485) at the Nebraska Service Center on January 5, 2004. Plaintiff applied approximately 15 months after her asylee status was granted.

19. NSC is actively adjudicating Plaintiff's application in accordance with standard procedures for asylee adjustment of status applications.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed at Lincoln, Nebraska
on this 11th day of February, 2008.

F. Gerard Heinauer
Director
Nebraska Service Center